IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| HARTFORD CASUALTY | ) | |
| INSURANCE COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 14 C 2883 |
| v. | ) | |
| | ) | Judge John Robert Blakey |
| KARLIN, FLEISHER & | ) | |
| FALKENBERG, LLC, et al., | ) | |
| | ) | |
| Defendants. | ) | |

<u>MEMORANDUM OPINION AND ORDER</u>

Hartford Casualty Insurance Company has sued Karlin, Fleisher & Falkenberg, LLC ("KF&F"); Karlin & Fleisher, LLC ("K&F"); Jonathan B. Fleisher, Charles V. Falkenberg, III, and Richard Fleisher seeking a declaratory judgment that it owes no coverage obligations under certain policies of insurance issued to the defendants in connection with claims filed against them in *Ronald Fleisher v. Karlin & Fleisher LLC, et al.*, Case. No. 2013-L-009765 (Circuit Court of Cook County, Illinois). KF&F filed a counterclaim, seeking a declaratory judgment that Hartford is obligated to provide both defense and indemnity in connection with Ronald's[1] lawsuit. The case is before the Court on the parties' cross motions for summary judgment. For the reasons explained below, Hartford's motion [26] is granted and Defendants' motion [39] is denied.

---

[1] Because several of the defendants and the plaintiff in the underlying litigation all have the same last name, the Court will refer to the Fleishers by their first names.

## Background & Procedural History

A.    The Insurance Policies

Hartford issued a series of liability insurance policies under policy number 82 SBA LV6768. The first two policies, covering the periods from October 30, 2010 to October 30, 2011 and from October 30, 2011 to October 20, 2012, were issued to K&F. Complaint [1], ¶11, Joint Statement of Undisputed Material Facts ("Joint SOF") [28], ¶¶9, 11. Pursuant to an endorsement effective March 8, 2011, KF&F was added as a named insured to the 2011-2012 policy. Complaint [1], ¶11, Joint SOF [28], ¶10. According to Hartford, the named insured was then changed from K&F to KF&F pursuant to an endorsement effective January 24, 2012. Complaint [1], ¶11, Joint SOF [28], ¶12. Defendants contends that they did not authorize the deletion of K&F as an insured. Joint SOF [28], ¶13. But, in either case, a third policy, covering the period from October 30, 2012 to October 30, 2013, was issued to KF&F. Complaint [1], ¶11, Joint SOF [28], ¶14. Defendants contend that they did not authorize the issuance of the 2012-2013 policy without K&F as an insured. Joint SOF [28], ¶15.

Each of the policies described above contained Employee Benefits Liability ("EBL") Coverage, with a retroactive date of October 20, 1999. Joint SOF [28], ¶16. The EBL Coverage provided in part, as follows:

**EMPLOYEE BENEFITS LIABILITY COVERAGE**

THIS IS CLAIMS-MADE COVERAGE.   PLEASE READ THE
ENTIRE ENDORSEMENT CAREFULLY.

# BUSINESS LIABILITY COVERAGE FORM

If shown in the Declarations as applicable, the following coverage applies. This coverage is subject to the provisions of the Business Liability Coverage Form except as provided below.

For purpose of this insurance:

A.      COVERAGE

This Section is replaced by the following:

1.      Employee Benefits Liability

a.      We will pay those sums that the insured becomes legally obligated to pay as "damages" because of "employee benefits injury" to which this insurance applies. No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under SUPPLEMENTARY PAYMENTS. This insurance does not apply to "employee benefits injury" which occurred before the Retroactive Date, if any, shown in the Declarations or which occurs after the policy period. The negligent act, error or omission must take place in the "coverage territory."

We will have the right and duty to defend any "claim" or "suit" seeking such "damages." But:

* * *

b.      This insurance applies to an "employee benefits injury" only if:

(1)      A "claim" for "damages" because of the "employee benefits injury" is first made against any insured during the policy period; and

* * *

c. A "claim" by a person or organization seeking "damages" will be deemed to have been made when notice of such "claim" is received and recorded by an insured or by us, whichever comes first.

d. All "claims" for "damages" because of "employee benefits injury" to the same person or organization will be deemed to have been made at the time the first of those "claims" is made against any insured.

## B. EXCLUSIONS

This Section is replaced by the following:

This insurance does not apply to:

\* \* \*

3. Any dishonest, fraudulent, criminal or malicious act.

\* \* \*

6. The failure of any person or organization to perform any obligation or to fulfill any guarantee with respect to:

a. The payment of benefits under "employee benefit programs"; or

b. The providing, handling or investing of funds related thereto.

\* \* \*

## C. WHO IS AN INSURED

\* \* \*

1. If you are designated in the Declarations as:

\* \* \*

     c.     An organization other than a partnership or joint venture, you are an insured. Your executive officers and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

* * *

2.     Each of the following is also an insured:

     a.     Your employees, other than your executive officers, but only for acts within the scope of their employment by you.

* * *

     No person or organization is an insured with respect to the conduct of any current or past partnership or joint venture that is not shown as a Named Insured in the Declarations.

* * *

## G. DEFINITIONS

This Section is replaced by the following:

As used in this Employee Benefits Liability insurance:

1.     "Administration" means:

     a.     Giving counsel to your employees or their dependents and beneficiaries, with respect to interpreting the scope of your "employee benefits program" or their eligibility to participate in such programs;

     b.     Handling records in connection with "employee benefits programs; and

5

c.     Starting or stopping any employee's participation in your "employee benefits program."

\* \* \*

4.     "Claim" means a written demand received by any insured for "damages" alleging "employee benefits injury," including the institution of a "suit" for such "damages" against any insured.

\* \* \*

6.     "Damages" include prejudgment interest awarded against the insured on that part of the judgment we pay. "Damages" do not include:

a.     Fines;

b.     Penalties; or

c.     Damages for which insurance is prohibited by the law applicable to the construction of this policy.

7.     "Employee benefits injury" means injury that arises out of any negligent act, error or omission in the "administration" of your "employee benefits program."

8.     "Employee benefits program" means a formal program or programs of employee benefits maintained in connection with your business or operations, such as but not limited to:

a.     Group life insurance, group accident or health insurance, profit sharing plans and stock subscription plans, provided that no other than an employee may subscribe to such insurance or plans; and

b.     Unemployment insurance, social security benefits, workers' compensation and disability benefits.

\* \* \*

Complaint [1], ¶12; Answer [12], ¶12; Joint SOF [28], ¶16.

B.    Ronald Fleisher's Claims against Defendants

In his Circuit Court complaint, Ronald G. Fleisher alleged that the defendants, his former employers, violated the Illinois Wage Payment and Collection Act, 820 ILCS 115/1 (Count I); he also alleged breach of contract (Count II). Complaint [28-7], ¶¶18-27 (Count I), 28-33 (Count II) (attached as Exhibit G to the parties' Joint SOF).    According to the allegations of his complaint, Ronald worked as a lawyer for K&F beginning in December 1974.    Circuit Court Complaint [28-7], ¶9.    In January 2008, he became an employee of both K&F and its successor firm, KF&F.    *Id.*    He worked at the firms until May 2011.    *Id.*    Hartford does not dispute that Ronald worked for both K&F and KF&F.    Joint SOF [28], ¶¶2, 9.

Since at least 1978, K&F had a policy of allowing employees to accrue sick time and vacation time as part of their compensation.    Circuit Court Complaint [28-7], ¶10.    As part of that same policy, employees who left the firm were paid for their unused accrued vacation time at their then-current salary rate and for their unused accrued sick time at 75% of their then-current salary rate.    *Id.*, ¶11.    The policy required that detailed records be maintained concerning the tracking of each employee's leave status.    Circuit Court Complaint [28-7], Exhibit A.    From approximately December 1974 to May 2011, Ronald accrued sick and vacation time in accordance with the above-described policy.    *Id.*, ¶12.

In 2007, KF&F was created specifically to serve as the eventual successor firm to K&F; after KF&F was created, K&F continued to exist as a legal entity and

continued to service its existing files but no longer accepted new files. Circuit Court Complaint [28-7], ¶13. New files went to KF&F. *Id.* Ronald understood that, after joining KF&F as an employee, he would continue to work under the policy described above (that is, he would continue to accrue unused vacation and sick time and would receive compensation for that accrued time when he left the firm's employ). *Id.*, ¶13.

Ronald retired from K&F and KF&F in May of 2011; at that time, his annual salary was $358,000 and he had accrued over 90 weeks of unused vacation time and over 322 days of unused sick leave. [28-7], ¶¶14-15. He alleges in his complaint that the defendants failed to pay him for this leave. Ironically, Ronald was the employee responsible for authorizing all employee sick leave and vacation requests and was also responsible for maintaining records for such benefits. Joint SOF [28], ¶21. Although he maintained detailed records for all other employees, he did not maintain sick leave and vacation benefits records for himself. *Id.*, ¶23. The defendants were not aware that Ronald accrued vacation and sick leave; nor were they aware that he had had failed to keep records for his own leave. Joint SOF [28], ¶19, 22-23.

On March 20, 2013, Ronald (through his attorneys) sent a demand letter to defendants seeking payment of his accrued but unused leave. *See* Affidavit of Jonathan B. Fleisher [28-4], Exhibit 1. That letter, addressed to Richard Fleisher, Jonathan Fleisher and Charles Falkenberg, III, advised that under the IWPCA,

K&F and KF&F were "legally obligated to pay [Ronald] his final compensation, including compensation for unused vacation days, at his final rate of pay when he retired in May 2011." *Id.*, p. 1. The letter further advised that, pursuant to the employers' own policies, Ronald was also entitled to earned but unused sick days. *Id.*, p. 2. Ronald offered to settle the matter for $500,000 in vacation pay and $330,270 in sick pay, or, in the alternative, for $621,000 (the total vacation pay he believed he was owed). *Id.*, p. 2. It is not clear from the record how the defendants responded to Ronald's initial demand. On August 29, 2013, however, Ronald sued.

In his complaint, which was filed in the Circuit Court of Cook County, Ronald named as defendants Karlin & Fleisher, LLC; Richard Fleisher; Karlin, Fleisher & Falkenberg, LLC; Jonathan B. Fleisher and Charles V. Falkenberg, III, and he alleged violation of the Illinois Wage Payment and Collection Act and breach of contract. Complaint [28-7], ¶1. He alleged that, under defendants' policy, he was owed more than $951,000 in accrued but unpaid vacation and sick pay and that the defendants had failed to pay it. *Id.*

Attached to the Circuit Court Complaint was a memorandum dated September 28, 1978, stating that employees are entitled to two weeks paid vacation after one year of employment and three weeks paid vacation after four years of employment; the memo does not say anything about carrying over unused vacation time. Complaint [28-7], Exhibit A, p. 1. The memo also stated that sick leave is accrued as follows: for the first three months of employment: no paid leave; for three

months to six months: three days of paid leave; for six months to 12 months: an additional three days of paid leave; after one year: 8 days of paid leave; and after 2 years, 10 days of paid leave.  *Id.* [28-7], Exhibit A, p. 2.  The memo further stated that "[a]s of the employee's anniversary date, as defined above, an employee may request payment for any unused leave days which will be paid at the rate of 75% of the employee's regular rate of pay.  If the employee so desires, the unused leave may be accumulated and carried over into the succeeding year."  *Id.*

C.    The Coverage Dispute

On September 25, 2013, Jonathan Fleisher sent a copy of Ronald's Circuit Court Complaint to Michael Klee at Mesirow Financial, K&F's broker, asking him to "contact the appropriate people at Hartford on our behalf and give them notice of the attached suit." [28-4], Exhibit 3.   In that email, Fleisher stated defendants' "expectation that coverage will be available under the Employee Benefits Liability Provision on our Business Owners Policy (policy number 83 SBA LV6768)." *Id.*

Almost five months later, on February 4, 2014, Hartford advised Jonathan that "because of the complicated nature of this matter our review is ongoing. Thank you for your patience, I will let you know as soon as our review is completed." [28-4], Exhibit 5.   Jonathan responded that same day with the following email:

> Thank you for the update on this claim.   Unfortunately, it has been months since the claim was submitted and yet there is no word on coverage.   Our most recent billing statement from our attorneys totals in excess of $17,000 and we are hesitant to attempt to resolve the case for a negotiated amount for fear of compromising our coverage.   I know that you've indicated that our fees will be reimbursed if there is

coverage but if it is ultimately determined that there isn't coverage, we will have been prejudiced for incurring fees in a matter that could have been settled.

It would seem that an appearance by the Hartford with a reservation of rights while the issues are worked out, wherein the Hartford pays the fees until such time, would be in everyone's best interest.

[28-4], Exhibit 6. On April 7, 2014, Jonathan again emailed Hartford asking for an answer on the defense issue:

Several more months have passed since you last communicated that we would get a decision shortly on coverage under the Hartford policy of insurance in the above-captioned matter. The Attorney Fees have continued to escalate and we have been delaying trying to settle the case for a compromised amount for fear of compromising our coverage. This has put us in an extremely difficult position and harmed our ability to handle the matter in the way which best protects our interests. You have provided no assistance in that regard either which further leaves us in the dark.

You have been telling us since November that a decision on coverage will come shortly and yet we have heard nothing.

In order to protect our interests as an insured and avoid the ongoing unreasonable delay that has hurt our defense, I would again request that you file an appearance and defense in this matter. Not doing so up to this point indicates a clear failure to timely investigate the matter or defend our interests. We are entirely in the dark as to where any problem in coverage may exist or even whether any investigation in that regard is taking place.

Please advise us as to which firm will be defending our interests in this matter under the policy. Anything less at this point would be indicative of bad faith.

[28-4], Exhibit 7. On April 16, 2014, Jonathan wrote again:

We still have not heard from you regarding coverage in the above captioned matter. All parties have now agreed to mediate the matter in front of Retired Judge Bronstein on May 9, 2014. Our hope is to

11

perhaps resolve the matter and cut off the attorney fees we are incurring due to your failure to have counsel appear on our behalf.

Please advise as to whether counsel and coverage will be provided for mediation.

[28-4], Exhibit 8.

On April 22, 2014, Hartford filed this lawsuit, seeking a declaratory judgment that it owed no insurance coverage obligations to KF&F, K&F, Charles or Richard in the Circuit Court lawsuit. Complaint for Declaratory Judgment [1], ¶1. Hartford, however, did not at that time serve the defendants.

On April 25, 2014, Hartford finally responded to defendants' pleas for a coverage decision, advising defendants that it "respectfully disclaims coverage to the Defendants for the claims in the <u>Ronald Fleisher</u> suit." Letter from Albert Aquino to defendants dated April 25, 2014 [28-4], Exhibit 9, p. 1. Hartford explained that, because the Employee Benefits Liability Coverage was "issued on a 'claims made basis," and because "the claim at issue was first made when the <u>Ronald Fleisher</u> suit was filed on August 29, 2013, during the 2012-2013 policy period," "the only policy that could be triggered would be the 2012-2013 policy, and there can be no coverage for the <u>Ronald Fleisher</u> suit under the 2011-2012 and 2012-2013 Policies because a 'claim' was not made until after those policies had expired." *Id.*, p. 9. Hartford also explained that defendants' EBL Coverage "provides insurance for a 'claim' for 'damages' because of 'employee benefits injury,' which is defined as 'injury that arises out [of] any negligent act, error or omission in the 'administration' of your

12

'employee benefits program.'" *Id.* Because, in Hartford's view, the "<u>Ronald Fleisher</u> suit does not involve a negligent act, error or omission in the 'administration' of your 'employee benefits program' as defined in the Hartford Policies," Hartford denied coverage for the suit. *Id.*

In its letter, Hartford explained that it was denying coverage for other reasons as well – including that defendants may have "breached the Notice Conditions in the EBL Coverage" and the application of Exclusion B.6 (precluding coverage for claims that arise from the failure to perform obligations or fulfill guarantees with respect to the payment of benefits under an employee benefits program). *Id.*, p. 10. Hartford further explained that even if Ronald's suit alleged a claim for damages because of an employee benefits injury, there would be no coverage for K&F, its officers, members or employees after January 24, 2012 on the 2011-2012 Policy [or] under the 2012-2013 Policy" because "K&F and its members, Richard and Jonathan are not insureds under the 2012-2013 policy . . . ." *Id.* Finally, in the April 25, 2014 letter, Hartford advised that it had filed a declaratory judgment action against the Defendants seeking a declaration of non-coverage for all claims in the <u>Ronald Fleisher</u> suit." *Id.*

On May 2, 2014, Charles Falkenberg, III wrote to Albert Aquino at Hartford, stating that the April 25, 2014 denial letter "focuses on the 'Exclusions' section of the policy when in fact [Ronald's] claim should not fall under 'exclusions' for failing to pay a benefit, but rather under a negligent administration of our employee benefits

program." Letter from Falkenberg to Aquino dated May 2, 2014 [28-5], Exhibit 7, p.

2. Falkenberg explained that the "failure to account for Ronald Fleisher's time was

a 'negligent act, error or omission in the administration of our employee benefits

program. That error in handling the records has created the potential that we will

have to pay sums because of an employee benefits injury as defined in the policy."

*Id.* Falkenberg noted that this "additional information has shown a clear right to

coverage and created a duty to defend. At the very least, it has raised a doubt that

should be resolved in favor of the insured." *Id.*, p. 3.

On May 7, 2014, Hartford's attorneys responded to Falkenberg reiterating the

denial of coverage and Hartford's intent to proceed with this declaratory judgment

action. Letter from Michael J. Duffy to Charles Falkenberg, III dated May 7, 2014

[28-5], Exhibit 8.

On May 9, 2014, the parties in the Circuit Court litigation engaged in a

mediation session and reached a settlement of Ronald's IWPCA and breach of

contract claims. Joint SOF [28], ¶42. During the mediation, Charles Falkenberg

called Hartford's attorneys requesting that Hartford participate in the negotiations

and contribute toward the potential settlement and defense of claims made in the

Circuit Court litigation. Joint SOF [28], ¶41. Although the claims were ultimately

settled, defendants incurred significant fees, costs and expenses in defending against

the claims asserted in Ronald's Circuit Court complaint. *Id.*, ¶44.

Summons was issued in this case on May 12, 2014. Defendants waived service and voluntarily appeared in the case on June 4, 2014 [6]. Hartford moved for summary judgment on September 30, 2014 [26]. In response, the defendants cross-moved for summary judgment [39]. Hartford seeks summary judgment solely with respect to the duty to defend under the policies. The defendants initially sought summary judgment as to both the duty to defend and the duty to indemnify. The Court, however, struck that portion of the motion dealing with indemnification. Thus, at this point, the only issue before the Court is whether, under the plain language of the policies, Hartford had a duty to defend against the claims in the *Ronald Fleisher* lawsuit. Hartford argues that, under the plain language of the policy, it had no duty to defend defendants in that action. Defendants argue just the opposite: that under the plain language of the policies, Hartford was obligated to defend them in the Circuit Court action.

## Discussion

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). At this stage, the Court does not weigh evidence or determine the truth of the matters asserted. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986). The Court views all evidence and draws all inferences in favor of the non-moving party, and may enter

summary judgment only if the record as a whole establishes that no reasonable jury could find for the non-moving party. *Michas v. Health Cost Controls of Ill., Inc.,* 209 F.3d 687, 692 (7th Cir. 2000).

A.    Hartford's Duty to Defend

There is no dispute that Illinois law governs the insurance policies at issue in this case.    In Illinois, an insurer's duty to defend its insured is broader than its duty to indemnify. *E.g., Hilco Trading, LLC v. Liberty Surplus Insurance Corp.,* 8 N.E.3d 166, 174 (Ill. App. Ct. 2014)(citing *West Bend Mutual Insurance Co. v. Sundance Homes, Inc.,* 606 N.E.2d 326, 327 (Ill. App. Ct. 1992)).    To determine whether the duty to defend has been triggered, the Court looks to the allegations in the complaint and compares them with the language of the policy. *Northfield Insurance Co. v. City of Waukegan,* 701 F.3d 1124, 1129 (7th Cir. 2012)(citing *General Agents Insurance Co. Of America, Inc. v. Midwest Sporting Goods Co.,* 828 N.E.2d 1092, 1098 (Ill. 2005)).    " [A]n insurer has a duty to defend the insured if the underlying complaint alleges facts that fall within, or potentially within, the policy's coverage." *Menard, Inc. v. Country Preferred Insurance Co.,* 992 N.E.2d 643, 648 (Ill. App. Ct. 2013)(citing *Outboard Marine Corp. v. Liberty Mutual Insurance Co.,* 607 N.E.2d 1204, 1212    (Ill. 1992)).    And, if "the complaint alleges several causes of action or theories of recovery against an insured," the duty to defend is triggered if "even one of those causes of action or theories of recovery is within the scope of coverage." *Maryland Casualty Co v. Peppers*, 355 N.E.2d 24, 28    (Ill. 1976), *cited*

16

*in Pekin Insurance Co. v. Kiefer Landscaping, LLC*, No. 5-12-0588, 2014 WL 272845, at *2 (Ill. App. Ct. Jan. 23, 2014). "Both the policy terms and the allegations in the underlying complaint are liberally construed in favor of the insured, and any doubts and ambiguities are resolved against the insurer." *Amerisure Mutual Insurance Co. v. Microplastics, Inc.*, 622 F.3d 806. 811 (7th Cir. 2010)(citing *State Farm Fire and Casualty Co. v. Perez*, 899 N.E.2d 1231, 1235 (Ill. App. Ct. 2008); *Pekin Insurance Co. v. Beu*, 876 N.E.2d 167, 170 (Ill. App. Ct. 2007)).

Here, the relevant complaint is the one filed by Ronald Fleisher in the Circuit Court action. Ronald's complaint alleges that K&F "had an employment practice whereby employees who left the K&F Firm would be paid for their unused accrued vacation time at their then current salary rate. Similarly the K&F Firm further had an employment practice whereby employees who left the K&F Firm would be paid for their unused accrued sick time at 75% of their then current salary rate. Complaint [28-7], ¶11. The Complaint further alleges that, in "2008 KF&F began to pay a portion of Ronald's salary, and thus he was an employee of both firms." *Id.*, ¶13. "Irrespective of any other terms or conditions under which Ronald may have joined KF&F or was joined to KF&F as an employee, he did so with the understanding and agreement of Defendants: (a) that he would continue to accrue sick and vacation time under the same terms that he had accrued them at K&F; and (b) that either K&F and/or KFF remained obligated to pay him for the unused sick and vacation time that he has accrued at K&F to date upon his departure from K&F

17

and/or KFF." *Id.*, ¶13. Finally, the complaint alleges that "pursuant to Defendants' policies, practices, and procedures, Defendants owed Ronald in excess of $620,000 for his accrued, unused vacation days" and "in excess of $330,000 for his accrued, unused sick days" but "failed to pay Ronald anything for his accrued but unused sick and vacation days in May 2011 and, to date, have not paid him for that time." *Id.*, ¶¶14-15, 17.

The Court first considers Hartford's arguments concerning the relevant policies and insureds. Hartford argues that only the EBL Coverage in the 2012-2013 Hartford Policy could potentially be available for coverage because of the timing of defendants' claim; relatedly, they argue that coverage would be unavailable to K&F under that policy because neither K&F nor its members were "insureds" under the 2102-2013 policy.

It is undisputed that the Hartford insurance policies were written on a "claims-made" basis – that is, they only cover claims that are made during the policy period. *E.g., National Union Fire Ins. Co. of Pittsburgh v. Baker & McKenzie*, 997 F.2d 305, 306 (7th Cir. 1993). Policy Number 83 SBA LV6768 DV was issued to Karlin & Fleisher LLC; the policy had an effective date of 10/30/10 and an expiration date of 10/30/11. Joint SOF, Exhibit A, p. 1. An endorsement in this policy identifies Karlin Fleisher and Falkenberg LLC as a named insured. *Id.*, p. 6. The subsequent policies had effective dates of 10/30/11 to 10/30/12 and 10/30/12 to 10/30/13. Joint SOF [28], Exhibits B, C. The latest of these policies listed KF&F

on the declarations page and included an endorsement stating that KF&F was "added to the Declarations as [a] Named Insured[]." Joint SOF [28-3], Exhibit C, p. 8. This language might explain why defendants may have been confused about whether K&F – which had historically been the only insured identified on the Declarations page – was still a named insured; the policy did not indicate that any insured had been removed from the Declaration or otherwise suggest that K&F was being removed as an insured.

According to the policy, a "'claim' by a person or organization seeking 'damages' will be deemed to have been made when notice of such 'claim' is received and recorded by an insured or by us, whichever comes first." EBL Coverage, A(1)(c). Here, the evidence in the record shows that the defendants received notice of Ronald's claim on March 20, 2013, when they received the demand letter from Ronald's attorney. Indeed, it is undisputed that, prior to receiving Ronald's demand letter, the defendants had no knowledge concerning the claims asserted in the demand letter. Joint SOF, ¶19.

Hartford argues that K&F and Richard were not named as insureds on the 2012-2013 policy and that, as a practical matter, this means it had no duty to defend these insureds. But even if that were true, that argument says nothing about Hartford's duty to defend the insureds who *were* named in that policy. There is no question that KF&F was a named insured and there is no question that KF&F was named as a defendant in Ronald's lawsuit. Thus, if Ronald's claims fall within – or

potentially within – the scope of coverage, Hartford would be obligated to defend even if K&F was no longer an insured. *E.g. National American Insurance Co. v. Artisan and Truckers Casualty Company*, --- F.3d ---, 2015 WL 4645245, at *5 (7th Cir. Aug. 6, 2015)(an insurer cannot refuse to defend a lawsuit because some aspects of the underlying complaint fall within the exclusions for coverage; the duty to defend exists even if only one claim or cause of action falls within the policy's coverage). As explained below, however, the claims do not fall within (or even potentially within) the scope of coverage.

With regard to the scope of coverage, Hartford argues that Ronald's claims are predicated on defendants' failure to pay, not on any negligent act, error or omission, and that his claims therefore fall outside the scope of EBL Coverage provided in the policies. As quoted above, the relevant policies included Employee Benefits Liability Coverage, pursuant to which Hartford agreed to pay "those sums that the insured becomes legally obligated to pay as 'damages' because of "employee benefits injury" to which this insurance applies." Joint SOF, ¶16; Exhibit C [28-3], p. 135. The coverage applied to an "employee benefits injury" only if:

(1) A "claim" for "damages" because of the "employee benefits injury" is first made against any insured during the policy period; and

(2) At the time you applied for this insurance you had no knowledge of any "claim" or "suit" or of any "employee benefits injury" which might reasonably be expected to result in a 'claim" or "suit" except as you had reported to us in writing at the time you so applied.

*Id.* A "claim" "will be deemed to have been made when notice of such 'claim' is received and recorded by an insured or by us, whichever comes first."  *Id.*

There is no dispute that Ronald's claim for his employee benefits injury was first made against defendants during the October 30, 2012-October 30, 2013 policy period; nor is there any dispute that defendants had no knowledge of any claim, suit or injury when they applied for the Hartford insurance.

Two other provisions in the policy's Employee Benefits Liability Coverage section are important for present purposes.  First, the policy defines an "employee liability benefits injury" to mean an "injury that arises out of any negligence act, error or omission in the 'administration' of your 'employee benefits program'" and defines "administration" to include the "handling [of] records in connection with 'employee benefits programs . . . '"  Joint SOF, Exhibit C [28-3], pp. 139-140 (¶G(7), (1)(b)).  Also relevant for present purposes is one of the exclusions in this section. The policy provides that the Employee Benefits Liability Coverage does not apply to: "the failure of any person or organization to perform any obligation or to fulfill any guarantee with respect to: (a) the payment of benefits under "employee benefits programs"; or (b) the providing, handling or investing of funds related thereto." Joint SOF, Exhibit C, p. 136 (¶B(6)).

Based on the plain language of the policy, then, only negligent acts or omissions are covered.  As Hartford correctly points out, an intentional policy determination, including the establishing of a vacation or sick pay policy, is not a

negligent act.  *E.g., Kane County Personnel, Inc. v. Federal Insurance Company*, No. 13 C 8800, 2014 WL 2609799, at *5 (N.D. Ill. June 11, 2014).  In *Kane County Personnel*, the parties disputed coverage for an underlying lawsuit in which the plaintiff employees claimed that the terms of the insured employer's vacation pay plan, as applied to the plaintiff employees, violated Illinois law.  *Id.* at *4.  Holding that the suit "did not, under any reasonable interpretation, involve the 'administration' of the vacation pay plan," the court found that the insurer had no duty to defend.  *Id.*  An allegation that the employer adopted an illegal vacation pay plan is not a claim that the employer committed a 'negligent act' in the plan's 'administration.'"  *Id.* at *5.

Additionally, the Seventh Circuit has held that there is "a well-recognized line of demarcation between negligent acts and breaches of contract."  *Baylor Heating & Air Conditional, Inc. v. Federated Mutual Insurance Co.*, 987 F.2d 415, 420 (7th Cir. 1993).  Thus, the Court agrees with Hartford that Ronald's breach of contract claim falls outside the scope of coverage.  Any damages Ronald could obtain through this claim would necessarily be damages for a breach of contract and not for a negligent act.

Ronald's complaint, however, also includes a claim for violation of the Illinois Wage Collection and Payment Act, and, in order to be entitled to summary judgment on the duty to defend, Hartford must show that all of the claims asserted fall outside the scope of coverage.  If even one claim is covered – or potentially covered –

Hartford had a duty to defend. "An insurer is obligated to defend its insured if the underlying complaint contains allegations that potentially fall within the scope of coverage." *Health Care Industry Liability Ins. Program v. Momence Meadows Nursing Ctr., Inc.,* 566 F.3d 689, 694 (7th Cir. 2009)(citing *Lyerla v. AMCO Ins. Co.,* 536 F.3d 684, 688 (7th Cir. 2008); *Gen. Agents Ins. Co. of Am., Inc. v. Midwest Sporting Goods Co.,* 828 N.E.2d 1092, 1098 (Ill. 2005)). "In other words, if *any* portion of the suit potentially falls within the scope of the coverage, the insurer is obligated to defend." *Health Care Industry Liability Ins. Program*, 566 F.3d at 694 (emphasis in original)(citing *Valley Forge Ins. Co. v. Swiderski Elecs., Inc.,* 860 N.E.2d 307, 315 (Ill. 2006)).

Here, Ronald's IWCPA claims does not allege any intentional act; nor does it allege an intentional refusal to pay. Ronald alleged that the employer had a policy or practice of paying departing employees their accrued by unused sick and vacation pay as part of their overall compensation package. The defendants argue that their vacation and sick leave policy required the maintenance of true and accurate records of an employee's accrual and use of vacation and sick leave as required by the IWPCA. Ronald was the employee responsible for the maintenance of such records, and he failed to maintain such records for himself; this was a negligent act, error or omission in the administration of the vacation and sick leave policy. Ronald's complaint is not inconsistent with the defendants' statements and representations that they did not know Ronald was entitled to such benefits – not because they

believe their policy did not require them to pay him, but because they had no idea he had accumulated accrued and unused leave, given his failure to maintain or provide records demonstrating his entitlement.

A violation of the IWPCA need not involve an intentional act. The IWPCA provides that "[e]very employer shall pay the final compensation of separated employees in full, at the time of separation, if possible, but in no case later than the next regularly scheduled payday for such employee." 820 ILCS 115/5. An employee who is not timely paid final compensation by his employer is

> entitled to recover through a claim filed with the Department of Labor or in a civil action, but not both, the amount of any such underpayments and damages of 2% of the amount of any such underpayments for each month following the date of payment during which such underpayments remain unpaid. In a civil action, such employee shall also recover costs and all reasonable attorney's fees.

820 ILCS 115/14(a). The Act makes it a misdemeanor for an employer to willfully refuse to pay final compensation. 820 ILCS 115/14(a-5)(1), (2). The language relating to willful refusal to pay suggests that a refusal to pay need not be willful, but may be, as here, the result of negligent record-keeping, leading to a fundamental lack of information about what is or may be owed. Ronald alleges nothing about a willful refusal to pay and nothing in his complaint suggests an intent to invoke section 115/14(a-5).

At bottom, however, even the IWCPA sounds in contract, not in negligence. *Baylor* is instructive in making this determination. There, the employer intentionally refused to honor a collective bargaining agreement and intentionally

24

refused to make pension fund payments.   It claimed it did so because it believed it was not contractually obligated to make such payments.   *Baylor*, 987 F.2d at 419. The Seventh Circuit held that the employer's motives in refusing to pay were irrelevant; even if the employer believed it had no contractual obligation to pay, that belief did not turn its intentional refusal into a negligent act.   *Id.*

Ronald's claim is a breach of contract claim.   He alleges throughout his complaint that the defendants were obligated under the terms of his employment agreement (the terms of which may have been implied, rather than express, but it was nonetheless an agreement as alleged in the complaint) to pay him for accrued but unused vacation and sick leave.   The fact that defendants may not have known the exact amount he was owed (for whatever reason) does not alter the fact that they failed to pay him in violation of their policy or practice.   Nor does Ronald's failure to maintain records convert their failure to pay to a negligent act.   As in *Baylor*, the defendants' motives for failing to pay are irrelevant.   That they may not have had records or known the amount to be paid does not transform their failure to pay into a negligent act.

Based upon the plain language of the policy's provisions relating to Employee Benefits Liability Coverage, the Court finds that Ronald's claims fall outside the scope of coverage.   The policy provides coverage for negligent errors or omissions only, and does not provide coverage for breach of contract, even when that contract may involve an employee benefit program.   As a result, Hartford had no duty to

defend the defendants in the underlying litigation and Hartford's refusal to provide a defense did not amount to a breach of contract.

B.     Hartford's Duty to Indemnify

Although technically not before the Court, the issue of indemnification must be discussed.   As noted above, the duty to defend is much broader than the duty to indemnify.   *E.g., Westchester Fire Ins. Co. v. G. Heileman Brewing Co., Inc.*, 747 N.E.2d 955, 964 (Ill. App. Ct. 2001)(citing *Conway v. Country Casualty Ins. Co.*, 442 N.E.2d 245 (Ill. 1982)).   This is because the duty to defend is triggered where a claim falls within the scope of coverage or potentially falls within the scope of coverage; in contrast, the duty to indemnify "arises only in circumstances of actual coverage; if the insurance policy does not cover what is alleged in the claim, the insurer will not have a duty to indemnify based on that claim."   *Keystone Consolidated Industries, Inc. v. Employers Insurance Company of Wausau*, 456 F.3d 758, 762 (7th Cir. 2006).   Having determined that Hartford had no duty to defend (because the allegations in the complaint fell outside the scope of coverage), the Court necessarily finds, as a matter of law, that Hartford had no duty to indemnify defendants for the fees and costs they incurred to defend against and settle those claims.

## Conclusion

For the reasons explained above, the Court finds that the claims asserted in Ronald Fleisher's Circuit Court complaint fell outside the scope of coverage and

Hartford, therefore, had no duty to defend defendants against those claims. Additionally, having determined that Hartford had no duty to defend, the Court finds, as a matter of law, that Hartford had no duty to indemnify defendants for the costs and fees they incurred in connection with the underlying lawsuit.

Accordingly, Hartford's motion for summary judgment [26] is granted and KF&F's motion for summary judgment [37] is denied. Judgement is entered in favor of Hartford and against defendants on Hartford's complaint for declaratory relief and on defendants' counterclaim for breach of contract.

Date: September 30, 2015

ENTERED:

John Robert Blakey
United States District Judge